UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | | |
|---|---|---|
| ANDREW PASSAGLIA, TODD MIKELL, STANLEY FADEN, TIMOTHY ALLEN NESS, DERIVATIVELY ON BEHALF OF MOTRICITY, | ) ) ) ) | Case No. |
| | ) | SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| Plaintiffs, | ) ) ) | |
| vs. | ) | |
| | ) | |
| JAMES R. SMITH, JR., LADY BARBARA JUDGE, HUNTER C. GARY, BRETT C. ICAHN, JAMES L. NELSON, JAY FIRESTONE, RYAN K. WUERCH, JAMES RYAN, ALLYN P. HEBNER, SUZANNE H. KING, BRIAN V. TURNER, JEFFREY A. BOWDEN, AND DOES 1-25, | ) ) ) ) ) ) ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants, | ) ) | |
| and | ) ) | |
| Motricity, a Washington corporation, | ) ) | |
| Nominal Defendant. | ) ) | |

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

## NATURE AND SUMMARY OF THE ACTION

1.    This is a shareholder derivative action brought on behalf of nominal defendant Motricity ("Motricity" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and violations of law.  These wrongs resulted in millions of dollars in damages to Motricity's reputation, goodwill, and standing in the business community. Moreover, these actions have exposed the Company to millions of dollars in potential liability for violations of state and federal law.

2.    Motricity is a provider of mobile data solutions and services that enable wireless carriers to deliver mobile data services to their subscribers.  It provides a suite of hosted, managed service offerings, including mobile Web portal, storefront, messaging, and billing support and settlement, which enable wireless carriers to deliver customized, carrier-branded mobile data services to their wireless subscribers.  Motricity provides these mobile data solutions to subscribers in the United States, the United Kingdom, the Netherlands, and Singapore.  The Company's mCore service delivery platform provides the tools for mobile subscribers to locate and access personally relevant and location-based content and services, engage in social networking and download content and applications.  The primary threat to Motricity is smartphones that provide Internet access without the Company's services.  Since these smartphones are growing in popularity, Motricity's potential market is gradually declining.

3.    The Individual Defendants however did not acknowledge the effect of smartphones on the Company, nor did they fully disclose these market risks to their shareholders. Instead, the Individual Defendants represented that the Company would continue to prosper despite the increasing popularity of smartphones.  In fact, April 2011, the Company acquired Adenyo, a mobile marketing, advertising and analytics solutions provider with operations in the United States, Canada and France.

4.    On May 3, 2011, however, Motricity issued a press release announcing its first

SHAREHOLDER DERIVATIVE COMPLAINT

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

quarter 2011 financial results.  The Company reported a net loss of $6.1 million.  The market's reactions was swift and severe.  The Company's market capitalization dropped $84,425,401, a one-day decline of 14% on volume of over 4 million shares.

5.    Then, on August 9, 2011, Motricity issued its second quarter 2011 financial results, reporting a net loss of $4.3 million.  This result fell well short of Wall Street's forecast. The release stated in part:

> "Our financial results are below our expectations, due to headwinds in our North America carrier business, increased competition in the international market which impacted our ability to close new deals, and a later than expected closing of the Adenyo transaction. We are providing a greater level of revenue detail in this press release on the primary areas of our business – North American Carrier, International Carrier and Mobile Marketing and Advertising – so that investors can better understand our company," said Ryan Wuerch, chief executive officer of Motricity.

* * *

> "At the senior level of management, we are initiating a transition in the CFO position to replace Allyn Hebner, who will assist with the transition. We also made the decision to make another transition in our senior team with Jim Ryan, who has previously served as our Chief Strategy and Marketing and Development Officer and whose responsibilities are now being handled by others," added Wuerch.

6.    As a result of this news, Motricity's market capitalization further plummeted, declining by $124,876,469 on August 10, 2011.

7.    The true facts, which were known by the Individual Defendants but concealed from the investing public, were as follows:

(a)    Motricity's business was being adversely affected by a faster than expected adoption of smartphones by consumers such that a smaller portion of the market needed Motricity's services;

(b)    Motricity's largest customers were not increasing their demand for Motricity's services to the extent represented; and

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

1             (c)     Motricity's business was not growing as fast as represented, particularly

2    domestically.

3            8.     As a result of the Individual Defendants' false statements, Motricity's stock

4    traded at inflated levels. However, after the above revelations seeped into the market, the

5    Company's shares were hammered by massive sales, sending them down $1,151,562,596 in

6    market capitalization, over 93% from their pre-disclosure high.

7            9.     While the Company and its outside investors experienced significant damages,

8    certain Individual Defendants took advantage of their insider knowledge and profited

9    handsomely by selling off their inflated stock before the crash.

10           10.    The Company is now the subject of a federal securities class action lawsuit filed

11    in the United States District Court for the Western District of Washington on behalf of investors

12    who purchased Motricity's shares. The responsibility for this harm lies with the Individual

13    Defendants. Accordingly, in order to protect the Company, plaintiffs brings this action to hold

14    the Individual Defendants accountable.

15    **JURISDICTION AND VENUE**

16           11.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28

17    U.S.C. §1332(a)(2) in that plaintiffs and defendants are citizens of different states and the

18    amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a

19    collusive action designed to confer jurisdiction on a court of the United States that it would not

20    otherwise have.

21           12.    This Court has jurisdiction over each defendant named herein because each

22    defendant is either a corporation that conducts business in and maintains operations in this

23    District, or is an individual who has sufficient minimum contacts with this District so as to

24    render the exercise of jurisdiction by the District courts permissible under traditional notions of

25    fair play and substantial justice.

26    SHAREHOLDER DERIVATIVE COMPLAINT

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

27

28

13.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Motricity maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Motricity, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiffs**

14.    Plaintiff Andrew Passaglia was a shareholder of Motricity at the time of the wrongdoing complained of, has continuously been shareholder since that time, and is a current Motricity shareholder. He is a resident of Illinois.

15.    Plaintiff Todd Mikell, was a shareholder of Motricity at the time of the wrongdoing complained of, has continuously been shareholder since that time, and is a current Motricity shareholder.  He is a resident of Illinois.

16.    Plaintiff Stanley Faden, was a shareholder of Motricity at the time of the wrongdoing complained of, has continuously been shareholder since that time, and is a current Motricity shareholder. Plaintiff Faden first purchased shares on December 10, 2010.

17.    Plaintiff Timothy Allen Ness, was a shareholder of Motricity at the time of the wrongdoing complained of, has continuously been shareholder since that time, and is a current Motricity shareholder. Plaintiff Ness is a resident of South Dakota.

**Nominal Defendant**

18.    Nominal Defendant Motricity is a Delaware corporation and a leading provider of mobile data solutions and services that allow wireless carriers to deliver high value mobile data

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

- 4 -

1  services to their subscribers.    Motricity also provides mobile marketing, advertising, and

2  merchandising solutions to brands, advertising agencies, and mobile operators around the globe.

3  Motricity provides its entire suite of mobile data service solutions through one, integrated, highly

4  scalable managed service platform.    Motricity's principal executive offices are located at 601

5  108th Avenue Northeast, Suite 800, Bellevue, Washington.

6  **Defendants**

7      19.    Defendant James R. Smith, Jr. ("Smith") is Motricity's Interim Chief Executive

8  Officer and has been since August 2011.  Smith is also Motricity's President and Chief Operating

9  Officer and has been since January 2009.  Smith is named as a defendant in a securities class

10  action complaint that alleges he violated Sections 10(b) and 20(a) of the Securities Exchange Act

11  of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Smith knowingly, recklessly, or

12  with gross negligence made improper statements in the Company's press releases and public

13  filing concerning: (i) the Company's business practices and financial results; (ii) negative trends

14  in the Company's business, including with the Company's most important customers; and (iii)

15  ominous developments in the Company's competitive market.  While in possession of material,

16  non-public information concerning Motricity's true business health, Smith sold 150,332 shares of

17  his stock for $3,017,496.26 in proceeds.  Motricity paid Smith the following compensation as an

18  executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|----------------------------------------|------------------------|-------|
| 2010 | $331,997 | $1,309,987 | $197,206 | $7,350 | $1,846,540 |

21      20.    Defendant Lady Barbara Judge ("Judge") is Motricity's Chairman of the Board

22  and has been since June 2010 and a director and has been since January 2010.  Judge is named as

23  a defendant in a securities class action complaint that alleges she violated Section 20(a) of the

24  Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Judge

25  knowingly or recklessly made improper statements in the Company's press releases and public

26  SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

filing concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.    Motricity paid Judge the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2010 | $49,845 | $268,220 | $318,065 |

Judge is a citizen of the United Kingdom.

21.    Defendant Hunter C. Gary ("Gary") is a Motricity director and has been since 2007.  Gary is also a member of Motricity's Audit Committee and has been since at least June 2010.  Gary is named as a defendant in a securities class action complaint that alleges he violated Section 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Gary knowingly or recklessly made improper statements in the Company's press releases and public filing concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.  Motricity paid Gary the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2010 | $26,786 | $114,800 | $141,586 |

Gary is a citizen of New York.

22.    Defendant Brett C. Icahn ("Icahn") is a Motricity director and has been since January 2010.  Icahn is also a member of Motricity's Audit Committee and has been since June 2011.  Icahn is named as a defendant in a securities class action complaint that alleges he violated Section 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Icahn knowingly or recklessly made improper statements in the Company's press releases and public filing concerning: (i) the Company's business practices and

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

1  financial results; (ii) negative trends in the Company's business, including with the Company's

2  most important customers; and (iii) ominous developments in the Company's competitive

3  market. Motricity paid Icahn the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2010 | $18,750 | $114,800 | $133,550 |

6  Icahn is a citizen of New York.

7      23.    Defendant James L. Nelson ("Nelson") is a Motricity director and has been since

8  June 2011. Nelson knowingly or recklessly made improper statements in the Company's press

9  releases and public filing concerning: (i) the Company's business practices and financial results;

10  (ii) negative trends in the Company's business, including with the Company's most important

11  customers; and (iii) ominous developments in the Company's competitive market. Nelson is a

12  citizen of Nevada.

13      24.    Defendant Jay Firestone ("Firestone") is a Motricity director and has been since

14  July 2011. Firestone is also a member of Motricity's Audit Committee and has been since July

15  2011. Firestone knowingly or recklessly made improper statements in the Company's press

16  releases and public filing concerning: (i) the Company's business practices and financial results;

17  (ii) negative trends in the Company's business, including with the Company's most important

18  customers; and (iii) ominous developments in the Company's competitive market. Firestone is a

19  resident of Canada.

20      25.    Defendant Ryan K. Wuerch ("Wuerch") was Motricity's Chief Executive Officer

21  from 2001 to August 2011. Wuerch was also Motricity's Chairman of the Board from 2002 to

22  June 2010 and a director from at least 2002 to August 2011. Wuerch founded Motricity in 2001.

23  Wuerch is named as a defendant in a securities class action complaint that alleges he violated

24  Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the

25  Securities Act of 1933. Wuerch knowingly, recklessly, or with gross negligence made improper

26  SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

statements in the Company's press releases and public filing c concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.  While in possession of material, non-public information concerning Motricity's true business health, Wuerch sold 294,800 shares of his stock for $5,639,563 in proceeds.  Motricity paid Wuerch the following compensation as an executive:

| Year | Salary | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|---------------|----------------------------------------|------------------------|-------|
| 2010 | $415,622 | $3,101,564 | $401,615 | $56,961 | $3,975,762 |

Wueerch is a citizen of Washington.

26.    Defendant James Ryan ("Ryan") was Motricity's Chief Development Officer from March 2010 to August 2011 and Chief Strategy and Marketing Officer from May 2009 to March 2010.  Ryan is named as a defendant in a securities class action complaint that alleges he violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Ryan knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filing concerning the Company's: concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.  While in possession of material, non-public information concerning Motricity's true business health, Ryan sold 71,270 shares of his stock for $1,302,877.62 in proceeds.  Motricity paid Ryan the following compensation as an executive:

| Year | Salary | Non-Equity Incentive Plan Compensation | Total |
|------|--------|----------------------------------------|-------|
| 2010 | $275,000 | $148,500 | $423,500 |

Ryan is a citizen of Georgia.

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734  -  FACSIMILE (206) 389-1708

27.    Defendant Allyn P. Hebner ("Hebner") was Motricity's Chief Financial Officer from March 2009 to August 2011.  Hebner also served as a consultant to Motricity through Tatum, LLC, an executive services company, from August 2008 to February 2009.  Hebner continues to serve at Motricity in a transitional capacity.  Hebner is named as a defendant in a securities class action complaint that alleges he violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Hebner knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filing concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.  While in possession of material, non-public information concerning Motricity's true business health, Hebner sold 52,475 shares of his stock for $1,070,796.25 in proceeds.  Motricity paid Hebner the following compensation as an executive:

| Year | Salary | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|----------------------------------------|------------------------|-------|
| 2010 | $275,000 | $163,350 | $7,350 | $445,700 |

Hebner is a citizen of Washington.

28.    Defendant Suzanne H. King ("King") was a Motricity director from 2004 to June 2011.  King was also a member of Motricity's Audit Committee and has been from at least June 2010 to June 2011.  King is named as a defendant in a securities class action complaint that alleges she violated Section 20(a) of Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  King knowingly or recklessly made improper statements in the Company's press releases and public filing concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.  Motricity paid King the following compensation as a director:

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2010 | $24,107 | $114,800 | $138,907 |

King is a citizen of the District of Columbia.

29.     Defendant Brian V. Turner ("Turner") was a Motricity director from December 2009 to July 2011.  Turner was also Chairman of Motricity's Audit Committee from at least June 2010 to July 2011.  Turner is named as a defendant in a securities class action complaint that alleges he violated Section 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.  Turner knowingly or recklessly made improper statements in the Company's press releases and public filing concerning: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market.  Motricity paid Turner the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2010 | $51,196 | $268,220 | $319,416 |

Turner is a citizen of Washington.

30.     Defendant Jeffrey A. Bowden ("Bowden") was a Motricity director from April 2010 to February 2011.  Bowden is named as a defendant in a securities class action complaint that alleges he violated Section 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.   Bowden knowingly or recklessly made improper statements in the Company's press releases and public filing concerning the Company's: (i) the Company's business practices and financial results; (ii) negative trends in the Company's business, including with the Company's most important customers; and (iii) ominous developments in the Company's competitive market. Bowden is a citizen of California.

31.     The defendants identified in ¶¶19 and 25-27 are referred to herein as the "Officer

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

1   Defendants." The defendants identified in ¶¶20-24 and 28-30 are referred to herein as the

2   "Director Defendants." The defendants identified in ¶¶21, 22, and 24 are referred to herein as

3   the "Audit Committee Defendants." The defendants identified in ¶¶ 19 and 25-27 are referred to

4   herein as the "Insider Selling Defendants." Collectively, the defendants identified in ¶¶19-30 are

5   referred to herein as the "Individual Defendants."

6        32.    The true names and capacities of defendants sued herein as Does 1 through 25,

7   inclusive, are presently not known to plaintiffs, who therefore sue these defendants by such

8   fictitious names. Plaintiffs will seek to amend this Complaint and include these Doe defendants'

9   true names and capacities when they are ascertained. Each of the fictitiously named defendants

10  is responsible in some manner for the conduct alleged herein and for the injuries suffered by the

11  Company as a result of defendants' wanton and illegal conduct.

12

13                   **DUTIES OF THE INDIVIDUAL DEFENDANTS**

14  **Fiduciary Duties**

15       33.    By reason of their positions as officers, directors, and/or fiduciaries of Motricity

16  and because of their ability to control the business and corporate affairs of Motricity, the

17  Individual Defendants owed and owe Motricity and its shareholders fiduciary obligations of

18  trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to

19  control and manage Motricity in a fair, just, honest, and equitable manner. The Individual

20  Defendants were and are required to act in furtherance of the best interests of Motricity and its

21  shareholders so as to benefit all shareholders equally and not in furtherance of their personal

22  interest or benefit.

23       34.    Each officer and director of the Company owes to Motricity and its shareholders

24  the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the

25  Company and in the use and preservation of its property and assets, and the highest obligations

26  of fair dealing. In addition, as officers and/or directors of a publicly held company, the

SHAREHOLDER DERIVATIVE COMPLAINT

27

28

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

1   Individual Defendants had a duty to promptly disseminate accurate and truthful information with

2   regard to the Company's operations, performance, management, projections, and forecasts so that

3   the market price of the Company's stock would be based on truthful and accurate information.

4   **Additional Duties of the Audit Committee Defendants**

5       35.    In addition to these duties, the Audit Committee Defendants owed specific duties

6   to Motricity to review and approve the Company's earnings press releases, guidance, and

7   quarterly and annual financial statements.   In particular, pursuant to the Audit Committee's

8   Charter, the members of the Audit Committee are required, inter alia, to:

9           (a)    Assist the Board in overseeing (i) the quality and integrity of the

10  Company's financial statements, (ii) the Company's accounting and reporting policies and

11  procedures, (iii) the Company's compliance with legal and regulatory requirements that may

12  have a material impact on the Company's financial statements, (iv) the independent auditor's

13  qualifications, independence and performance, (v) the Company's disclosure controls and

14  procedures, and (vi) the Company's internal control over financial reporting;

15          (b)    Provide the Board with the results of the Committee's monitoring and

16  recommendations derived therefrom; and

17          (c)    Provide to the Board such additional information and materials as it may

18  deem necessary to make the Board aware of significant financial matters that require the

19  attention of the Board.

20  **Control, Access, and Authority**

21      36.    The Individual Defendants, because of their positions of control and authority as

22  officers and/or directors of Motricity, were able to and did, directly and/or indirectly, exercise

23  control over the wrongful acts complained of herein, as well as the contents of the various public

24  statements issued by the Company.

25      37.    Because of their advisory, executive, managerial, and directorial positions with

26  SHAREHOLDER DERIVATIVE COMPLAINT

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

27

28

1   Motricity, each of the Individual Defendants had access to adverse, non-public information about

2   the financial condition, operations, and growth prospects of Motricity. While in possession of

3   this material, non-public information, the Individual Defendants made improper representations

4   regarding the Company, including information regarding the Company.

5       38.    At all times relevant hereto, each of the Individual Defendants was the agent of

6   each of the other Individual Defendants and of Motricity, and was at all times acting within the

7   course and scope of such agency.

8   **Reasonable and Prudent Supervision**

9       39.    To discharge their duties, the officers and directors of Motricity were required to

10  exercise reasonable and prudent supervision over the management, policies, practices, and

11  controls of the financial affairs of the Company. By virtue of such duties, the officers and

12  directors of Motricity were required to, among other things:

13          (a)    properly and accurately guide investors and analysts as to the true financial

14  condition of the Company at any given time, including making accurate statements about the

15  Company's financial health;

16          (b)    ensure that the Company complied with its legal obligations and

17  requirements, including acting only within the scope of its legal authority and disseminating

18  truthful and accurate statements to the investing public;

19          (c)    refrain from acting upon material, inside corporate information to benefit

20  themselves;

21          (d)    conduct the affairs of the Company in an efficient, business-like manner so

22  as to make it possible to provide the highest quality performance of its business, to avoid wasting

23  the Company's assets, and to maximize the value of the Company's stock;

24          (e)    remain informed as to how Motricity conducted its operations, and, upon

25  receipt of notice or information of imprudent or unsound conditions or practices, make reasonable

26  SHAREHOLDER DERIVATIVE COMPLAINT

27

28

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 • FACSIMILE (206) 389-1708

1  inquiry in connection therewith, and take steps to correct such conditions or practices and make

2  such disclosures as necessary to comply with securities laws; and

3         (f)    ensure that the Company was operated in a diligent, honest, and prudent

4  manner in compliance with all applicable laws, rules, and regulations.

5  **Breaches of Duties**

6         40.    Each Individual Defendant, by virtue of his or her position as a director and/or

7  officer, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith

8  and the exercise of due care and diligence in the management and administration of the affairs of

9  the Company, as well as in the use and preservation of its property and assets.  The conduct of

10  the Individual Defendants complained of herein involves a knowing and culpable violation of

11  their obligations as officers and directors of Motricity, the absence of good faith on their part,

12  and a reckless disregard for their duties to the Company and its shareholders that the Individual

13  Defendants were aware or should have been aware posed a risk of serious injury to the

14  Company.  The conduct of the Individual Defendants who were also officers and/or directors of

15  the Company have been ratified by the remaining Individual Defendants who collectively

16  comprised all of Motricity's Board.

17         41.    The Individual Defendants breached their duty of loyalty and good faith by

18  allowing defendants to cause, or by themselves causing, the Company to make improper

19  statements about the Company's business and financial results and outlook.  The Individual

20  Defendants also failed to prevent the other Individual Defendants from taking such illegal

21  actions.  Further, the Inside Selling Defendants (as defined herein) benefitted handsomely from

22  these improper statements by selling over $11 million worth of their personally held stock at

23  prices which they knew were inflated.  In addition, as a result of defendants' illegal actions and

24  course of conduct, the Company is now the subject of a class action lawsuit(s) that allege(s)

25  violations of securities laws.  As a result, Motricity has expended, and will continue to expend,

26  SHAREHOLDER DERIVATIVE COMPLAINT

27

28

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

1  significant sums of money.

2  **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

3  42.    In committing the wrongful acts alleged herein, the Individual Defendants have

4  pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

5  and conspired with one another in furtherance of their common plan or design.  In addition to the

6  wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants

7  further aided and abetted and/or assisted each other in breaching their respective duties.

8  43.    During all times relevant hereto, the Individual Defendants, collectively and

9  individually, initiated a course of conduct that was designed to and did: (i) deceive the investing

10  public, including shareholders of Motricity, regarding the Individual Defendants' management of

11  Motricity's operations and business prospects; (ii) facilitate the Inside Selling Defendants' illicit

12  sale of over $11 million of  their personally held shares while in possession of material, non-

13  public information; and (iii) enhance the Individual Defendants' executive and directorial

14  positions at Motricity and the profits, power, and prestige that the Individual Defendants enjoyed

15  as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of

16  conduct, the Individual Defendants, collectively and individually, took the actions set forth

17  herein.

18  44.    The Individual Defendants engaged in a conspiracy, common enterprise, and/or

19  common course of conduct.  During this time, the Individual Defendants caused the Company to

20  issue improper financial statements.

21  45.    The purpose and effect of the Individual Defendants' conspiracy, common

22  enterprise, and/or common course of conduct was, among other things, to disguise the Individual

23  Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust

24  enrichment; and to conceal adverse information concerning the Company's operations, financial

25  condition, and future business prospects.

26  SHAREHOLDER DERIVATIVE COMPLAINT

27

28

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

46.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

47.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## IMPROPER STATEMENTS

48.    Motricity provides mobile data solutions that enable wireless carriers to deliver mobile data services to their subscribers in the United States, the United Kingdom, the Netherlands, and Singapore.  The Individual Defendants made a series of improper statements concerning the Company's business practices and financial results.  Specifically, defendants failed to disclose negative trends in Motricity's business, including with Motricity's most important customers.  The improper statements began with the Company's Prospectus and IPO. In particular, the Prospectus for the IPO emphasized the growth potential of Motricity's market:

> The Yankee Group estimates that the mobile data services market in the U.S. will grow from $40 billion in 2009 to $48 billion in 2013, and worldwide will grow from $195 billion in 2009 to $253 billion in 2013.  The mobile data services market predominantly includes data access, content and applications, commerce and messaging services.

49.    The Prospectus also represented the Company's competitive strengths:

> *Strong Relationships with Wireless Carriers*.  We have well-established relationships with the top wireless carriers in the U.S. market, including Verizon

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

Wireless, AT&T, Sprint and T-Mobile USA and a new relationship with XL Axiata in Indonesia. We believe that we have been an integral partner with our wireless carrier customers and have assisted them with all phases of their mobile data services strategies, including design, development, deployment, provisioning, management, billing and customer support.

*Deep Integration within the Mobile Data Ecosystem.* Our mCore service delivery platform is deeply integrated into our wireless carrier customers' systems, with the result that we can more effectively deliver an enhanced mobile data experience to their subscribers. We connect directly into our wireless carrier customers' wireless network infrastructure as well as their provisioning and billing systems and their customer care systems. . . .

*Highly Scalable Platform.* Our mCore service delivery platform has been built using a flexible modular architecture that enables wireless carriers to deliver a highly scalable and highly reliable, carrier-branded experience.

*Comprehensive Expertise in Managed Service Operations.* . . . . We deliver these services to the world's leading carriers, application and content providers ranging in complexity from roll-out and testing of minor customizations to major new strategic initiatives involving numerous third parties and onboarding of content and roll-out of a continually expanding set of devices. Our managed service environment consists of thousands of servers across multiple datacenters and is capable and contracted to deliver highly reliable service delivery reaching up to 99.999% availability.

50.   The Prospectus also emphasized Motricity's future growth opportunities:

We intend to expand our business in developed and emerging international markets, such as those in Southeast Asia, India and Latin America. We recently entered into an agreement with XL Axiata, a wireless carrier in Indonesia. We intend to apply our expertise gained from the U.S. market and fully leverage the capabilities and scale of the mCore platform to enable the rapid deployment of advanced mobile data services in these new markets in a cost-effective and efficient manner.

. . . We believe that we are a market leader in mobile data services and solutions in terms of technological capabilities, market share and range of service offerings, and we intend to expand on this position. . . .

. . . We intend to leverage our core competencies, technologies, and existing market position to broaden our offerings and customer base and advance into new market segments. . . .

. . . We intend to extend further our support for new versions of

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

smartphones and extend our support for data-rich applications which have higher rates of data consumption on these mobile devices. In addition, we will continue to leverage our subscriber behavior insights and user interface expertise to offer more personalized and richer experiences to smartphones. We expect to fully capitalize on the extensive capabilities of smartphones and their significant market adoption.

51.    On August 3, 2010, Motricity issued a press release announcing its financial results for the second quarter of 2010, the period ended June 30, 2010.  For the quarter, the Company reported that revenue increased 5% to $30.4 million.  Defendant Wuerch commented on the results, stating, in pertinent part, as follows:

"Solid execution, accelerated revenue growth and significant margin expansion enabled Motricity to exceed expectations in revenues, Adjusted EBITDA and Adjusted Net Income . . . . Motricity's mCore platform is driving mobile data services and mobile internet growth for some of the largest carriers and enterprises in the world. Our ability to deliver 'Mobile as a Service' through a cloud computing environment is producing strong results that were evidenced in the second quarter. Our domestic business is continuing to grow as AT&T has contracted to implement our next-generation storefront solution – Marketplace. Moreover, we signed a multi-year extension to our longstanding relationship with Verizon Wireless, which includes enabling the mobile internet across Verizon's newest smartphones such as the HTC Incredible and Droid X. We are capitalizing on the massive global opportunity for mobile internet users by adding XL Axiata in Indonesia, one of the largest and fastest growing carriers in Southeast Asia, as the first customer in our Asia Pacific region growth strategy. We believe that this new relationship is a powerful leading indicator that carriers are turning to Motricity as their mobile data services partner of choice on a worldwide basis."

52.    On November 2, 2010, Motricity issued a press release announcing its financial results for the third quarter of 2010, the period ended September 30, 2010.  For the quarter, the Company reported that revenue increased 35% year-over-year to $37.9 million.  Defendant Wuerch commented on the results, stating, in pertinent part, as follows:

"Motricity has an exceptional, global opportunity, and we made substantial progress during the third quarter. As a mobile Internet pure-play, we believe we are well-positioned to drive strong growth year-over-year through the fourth quarter and beyond . . . . In North America, we successfully launched AT&T's AppCenter, powered by mCore Marketplace, providing AT&T's subscribers a broad range of content including applications, music, videos and

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

games with highly-personalized merchandizing and a new, simplified express purchase process. We also rolled-out MobileCast, a compelling new content management service giving carriers an intelligent architecture to drive mobile data services revenues through delivery of relevant media, applications and digital goods directly to subscribers' smartphones."

"We continue to capitalize on the unparalleled opportunities available in the emerging international markets and strengthened this position by launching XL Axiata's XLGo! in Indonesia, and by becoming the mobile data services provider for one of India's largest operators, Reliance Communications, with over 105 million subscribers. We experienced additional gains in Adjusted EBITDA and Adjusted Net Income, driving margin and shareholder value by leveraging our 'Mobile as a Service' cloud computing model . . . ."

53.    On February 8, 2011, Motricity issued a press release announcing its fourth quarter and fiscal year 2010 financial results. The Company reported net income of $2.9 million, or $0.06 diluted EPS, and revenue of $36 million for the fourth quarter. The Company additionally reported revenue for the full year 2010 of $133.4 million. The release stated in part:

"2010 was a breakout year for Motricity. During our first six months as a publicly-traded company we posted strong revenue, margin and profit growth," said Ryan Wuerch, chief executive officer. "Since our IPO last June, Motricity has strengthened its leadership position within the industry. We have continued to deliver market leading solutions for AT&T, Verizon and Sprint while aggressively expanding our international footprint – signing six new international operators throughout SE Asia and India – more than doubling our global addressable market opportunity. Moreover, in the fourth quarter we developed and launched a new solution in partnership with Sprint and HSN highlighting how Motricity's mCore platform delivers smartphone solutions that enhance the mobile experience on behalf of our enterprise customers."

"Our proposed acquisition of Adenyo, a global leader in mobile advertising, marketing, and analytics, further expands our immediate market opportunity into the rapidly growing mobile advertising and marketing space which ABI Research estimates will reach $29.9 billion in 2014 globally. Motricity has the opportunity to further monetize its access to over 350 million subscribers by integrating Adenyo's technology and deep enterprise and agency relationships into our mCore platform. Motricity's long-term objective is to participate in the direct and indirect monetization of over a billion users coming through our cloud-based, mCore platform. Motricity's ability to deliver highly personalized, relevant content and value-added services to mobile users globally through our 'mobile as a service' offering provides us with the most comprehensive mobile data services

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

- 19 -

platform in the market today," added Wuerch.

54.     On April 14, 2011, Motricity issued a press release announcing the acquisition of Adenyo, a mobile marketing, advertising and analytics solutions provider with operations in the United States, Canada and France.  The release stated in part:

> "With the acquisition of Adenyo and integration of their platform into mCore, we are changing the landscape of the mobile data services industry. Innovative operators, brands and agencies can now leverage Motricity's software as a service platform to provide highly targeted mobile advertising, marketing and analytics solutions. Our expertise will help them expand their market reach and provide their customers with relevant content and services. Motricity is creating new revenue opportunities by expanding its customer base to include global brands and ad agencies," said Ryan Wuerch, chief executive officer of Motricity. "Our focus in the coming years is to have one billion mobile customers worldwide accessing these offerings and services through Motricity's mCore platform."

55.     According to the Company's Form 8-K filing with the SEC, Motricity paid $49.1 million in cash and issued nearly 3.3 million shares of it common stock as consideration for the acquisition.

## THE TRUTH EMERGES

56.     On May 3, 2011, Motricity issued a press release announcing its first quarter 2011 financial results.  The Company reported a net loss of ($6.1) million, or ($0.15) diluted EPS, which included the Adenyo acquisition, and revenue of $32.2 million.  The release stated in part:

> "Motricity drove strong year-over-year growth in revenue and margin," said Ryan Wuerch, chief executive officer of Motricity. "Our international deployments with customers including XL, Celcom, Robi, Hello, Dialog and Reliance are on track, and managed services revenue from our new international customers grew 50 percent over the prior quarter. These facts, along with very encouraging usage metrics such as XL's recently reported 44% year-over-year growth in data revenue and 6 million users on XL!Go powered by Motricity, are strong leading indicators of substantial international growth."

> "Our international mobile operator sales pipeline has grown ten-fold since this time last year, including targets in Southeast Asia, India, Latin America and Europe with several at the final sales stage. The addition of mobile advertising and marketing capabilities to our mCore platform is amplifying these

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

- 20 -

opportunities. In a global market of over 4.5 billion mobile subscribers, Motricity is uniquely positioned to empower mobile operators, brands and advertising agencies to capitalize on the dynamic growth of the mobile internet," added Wuerch.

57.    On this news, Motricity's stock dropped $1.82 per share to close at $10.99 per share on May 4, 2011, a one-day decline of 14% on volume of over 4 million shares.

58.    Then, on August 9, 2011, Motricity issued its second quarter 2011 financial results, reporting a net loss of ($4.3) million, or ($0.09) diluted EPS, including the expenses of the Adenyo acquisition, and revenue of $34.6 million. This result fell well short of Wall Street's forecast. The release stated in part:

> "Our financial results are below our expectations, due to headwinds in our North America carrier business, increased competition in the international market which impacted our ability to close new deals, and a later than expected closing of the Adenyo transaction. We are providing a greater level of revenue detail in this press release on the primary areas of our business – North American Carrier, International Carrier and Mobile Marketing and Advertising – so that investors can better understand our company," said Ryan Wuerch, chief executive officer of Motricity.

* * *

> "At the senior level of management, we are initiating a transition in the CFO position to replace Allyn Hebner, who will assist with the transition. We also made the decision to make another transition in our senior team with Jim Ryan, who has previously served as our Chief Strategy and Marketing and Development Officer and whose responsibilities are now being handled by others," added Wuerch.

59.    As a result of this news, Motricity's stock price plummeted, opening at $2.26 per share on August 10, 2011, a decline of 50% on huge volume.

## REASONS THE STATEMENTS WERE IMPROPER

60.    The true facts, which were known by the defendants but concealed from the investing public were as follows:

(a)    Motricity's business was being adversely affected by a faster than expected

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

1    adoption of smartphones by consumers such that a smaller portion of the market needed
2    Motricity's services;

3                    (b)    Motricity's largest customers were not increasing their demand for
4    Motricity's services to the extent represented; and

5                    (c)    Motricity's business was not growing as fast as represented, particularly
6    domestically.

### INSIDER SALES BY DEFENDANTS

7          61.    Rather than providing the market with correct information, the Insider Selling
8    Defendants used their knowledge of Motricity's material, non-public information to sell their
9    personal holdings while the Company's stock was artificially inflated.  As officers and directors
10   of Motricity, defendants were privy to material, non-public information about the Company's
11   true business health.

12         62.    While in possession of this knowledge, Defendant Smith sold 150,332 shares of
13   his personally held Motricity stock for proceeds of $3,017,496.26.  Defendant Smith's sales were
14   timed to maximize profit from Motricity's then artificially inflated stock price.

15         63.    While in possession of this knowledge, Defendant Wuerch sold 294,800 shares of
16   his personally held Motricity stock for proceeds of $5,639,563.00.  Defendant Wuerch's sales
17   were timed to maximize profit from Motricity's then artificially inflated stock price.

18         64.    While in possession of this knowledge, Defendant Ryan sold 71,270 shares of his
19   personally held Motricity stock for proceeds of $1,302,877.62.  Defendant Ryan's sales were
20   timed to maximize profit from Motricity's then artificially inflated stock price.

21         65.    While in possession of this knowledge, Defendant Hebner sold 52,475 shares of
22   his personally held Motricity stock for proceeds of $1,070,796.25.  Defendant Ryan's sales were
23   timed to maximize profit from Motricity's then artificially inflated stock price.

24         66.    In sum, the Inside Selling Defendants sold over $11 million worth of stock was
25   sold at artificially inflated prices.

26   SHAREHOLDER DERIVATIVE COMPLAINT

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

27

28

## DAMAGES TO MOTRICITY

67.    As a result of the Individual Defendants' improprieties, Motricity disseminated improper, public statements concerning the Company's business health and growth prospects. These improper statements have devastated Motricity's credibility as reflected by the Company's almost 92% market capitalization loss.

68.    Further, as a direct and proximate result of the Individual Defendants' actions, Motricity has expended, and will continue to expend, significant sums of money.    Such expenditures include, but are not limited to:

(a)    costs incurred from defending and paying any settlement in the class actions for violations of federal securities laws;

(b)    costs incurred from the illicit financial gains realized by the Inside Selling Defendants; and

(c)    costs incurred from compensation and benefits paid to the defendants who have breached their duties to Motricity.

69.    Moreover, these actions have irreparably damaged Motricity's corporate image and goodwill.  For at least the foreseeable future, Motricity will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that Motricity's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

70.    Plaintiffs bring this action derivatively in the right and for the benefit of Motricity to redress injuries suffered, and to be suffered, by Motricity as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Motricity is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708

71.    Plaintiffs will adequately and fairly represent the interests of Motricity in enforcing and prosecuting its rights.

72.    Plaintiffs were shareholders of Motricity at the time of the wrongdoing complained of, have continuously been shareholders since that time, and are current Motricity shareholders.

73.    The current Board of Motricity consists of the following five defendants: Judge, Gary, Icahn, Nelson, and Firestone.  Plaintiffs have not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because Defendants Judge, Gary, Icahn, Nelson, and Firestone Face a Substantial Likelihood of Liability for Their Misconduct**

74.    Defendants Judge, Gary, Icahn, Nelson, and Firestone knowingly or in reckless disregard for their duties failed to implement adequate internal controls and allowed certain of the Individual Defendants to make improper statements concerning the Company's business health and prospects.

75.    Defendants Gary, Icahn and Firestone, as members of the Audit Committee, reviewed and approved the improper statements and earnings guidance.  The Audit Committee's Charter provides that it is responsible for compliance with accounting, legal, and regulatory requirements.   Thus, the Audit Committee Defendants were responsible for knowingly or recklessly allowing the improper statements related to the Company's earnings guidance and financial and disclosure controls.  Moreover, the Audit Committee Defendants reviewed and approved the improper press releases made to the public.  Despite their knowledge or reckless disregard, the Audit Committee Defendants caused these improper statements.  Accordingly, the Audit Committee Defendants breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein.  Thus, the Audit Committee Defendants

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 · FACSIMILE (206) 389-1708

- 24 -

1    face a substantial likelihood of liability for their breach of fiduciary duties so any demand upon
2    them is futile.

3        76.    Moreover, the acts complained of constitute violations of the fiduciary duties
4    owed by Motricity's officers and directors and these acts are incapable of ratification.

5        77.    Each of the defendant directors of Motricity authorized and/or permitted the
6    improper statements disseminated directly to the public or made directly to securities analysts
7    and which were made available and distributed to shareholders, authorized and/or permitted the
8    issuance of various of the improper statements and are principal beneficiaries of the wrongdoing
9    alleged herein and thus, could not fairly and fully prosecute such a suit even if such suit was
10   instituted by them.

11       78.    Motricity has been and will continue to be exposed to significant losses due to the
12   wrongdoing complained of herein, yet the Individual Defendants and current Board have not
13   filed any lawsuits against themselves or others who were responsible for that wrongful conduct
14   to attempt to recover for Motricity any part of the damages Motricity suffered and will suffer
15   thereby.

16       79.    If Motricity's current and past officers and directors are protected against personal
17   liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint
18   by directors and officers' liability insurance, they caused the Company to purchase that insurance
19   for their protection with corporate funds, i.e., monies belonging to the stockholders of Motricity.
20   However, the directors' and officers' liability insurance policies covering the defendants in this
21   case contain provisions that eliminate coverage for any action brought directly by Motricity
22   against these defendants, known as the "insured versus insured exclusion." As a result, if these
23   directors were to cause Motricity to sue themselves or certain of the officers of Motricity, there
24   would be no directors and officers' insurance protection and thus, this is a further reason why
25   they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this

26   SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

- 25 -

1 | action is brought, such insurance coverage exists and will provide a basis for the Company to

2 | effectuate recovery. If there is no directors and officers' liability insurance, then the current

3 | directors will not cause Motricity to sue the defendants named herein, since they will face a large

4 | uninsured liability and lose the ability to recover for the Company from the insurance.

5 |      80.    Moreover, despite the Individual Defendants having knowledge of the claims and

6 | causes of action raised by plaintiffs, the current Board has failed and refused to seek to recover

7 | for Motricity for any of the wrongdoing alleged by plaintiffs herein.

8 | **COUNT I**

9 | **Against the Individual Defendants for Breach of Fiduciary Duty**

10 |      81.    Plaintiffs incorporate by reference and reallege each and every allegation

11 | contained above, as though fully set forth herein.

12 |      82.    The Individual Defendants owed and owe Motricity fiduciary obligations. By

13 | reason of their fiduciary relationships, the Individual Defendants owed and owe Motricity the

14 | highest obligation of good faith, fair dealing, loyalty, and due care.

15 |      83.    The Individual Defendants, and each of them, violated and breached their

16 | fiduciary duties of candor, good faith, and loyalty. More specifically, the Individual Defendants

17 | violated their duty of good faith by creating a culture of lawlessness within Motricity, and/or

18 | consciously failing to prevent to Company from engaging in the unlawful acts complained of

19 | herein.

20 |      84.    The Officer Defendants either knew, were reckless, or were grossly negligent in

21 | disregarding the illegal activity of such substantial magnitude and duration. The Officer

22 | Defendants either knew, were reckless, or were grossly negligent in not knowing that the

23 | Individual Defendants' statements concerning the Company's business and health and prospects

24 | were improper. Accordingly, the Officer Defendants breached their duty of care and loyalty to

25 | the Company.

26 | SHAREHOLDER DERIVATIVE COMPLAINT

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 · FACSIMILE (206) 389-1708

27

28

85.    Director Defendants, as directors of the Company, owed Motricity the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting and engaging in the improper activity concerning the Individual Defendants' improper statements. Accordingly, the Director Defendants breached their duty of loyalty to the Company.

86.    The Audit Committee Defendants breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of oversight, as required by the Audit Committee Charter in effect at the time.

87.    The Inside Selling Defendants breached their duty of loyalty by selling Mortricity stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's shareholders.  The information described above was proprietary, non-public information concerning the Company's future business prospects.  It was a proprietary asset belonging to the Company, which these defendants used for their own benefit when they sold Motricity common stock.

88.    The Inside Selling Defendants breached their duty of loyalty by selling Motricity stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's shareholders.  The information described above was proprietary, non-public information concerning the Company's future business prospects.  It was a proprietary asset belonging to the Company, these which defendants used for their own benefit when they sold Motricity common stock.

89.    As a direct and proximate result of the Individual Defendants' beaches of their fiduciary obligations, Motricity has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

90.    Plaintiffs, on behalf of Motricity, have no adequate remedy at law.

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

91.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

92.   As a result of the Individual Defendants' failure to act in accordance with the fiduciary duties, they have caused Motricity to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

93.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

94.   Plaintiffs, on behalf of Motricity, have no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

95.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

96.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Motricity.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Motricity.

97.   The Inside Selling Defendants sold over $145 million worth of Motricity stock while in possession of material, adverse non-public information that artificially inflated the price of Motricity stock.  As a result, defendants profited from their misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

98.   Plaintiffs, as shareholders and representatives of Motricity, seek restitution from these defendants, and each of them, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their

SHAREHOLDER DERIVATIVE COMPLAINT

WEINSTEIN COUTURE PLLC
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 - FACSIMILE (206) 389-1708

1   wrongful conduct and fiduciary breaches.

2       99.     Plaintiffs, on behalf of Motricity, have no adequate remedy at law.

3                                **PRAYER FOR RELIEF**

4       WHEREFORE, plaintiffs, on behalf of Motricity, demand judgment as follows:

5       A.      Against all of the defendants and in favor of the Company for the amount of

6   damages sustained by the Company as a result of the defendants' breaches of fiduciary duties,

7   waste of corporate assets, and unjust enrichment;

8       B.      Directing Motricity to take all necessary actions to reform and improve its

9   corporate governance and internal procedures to comply with applicable laws and to protect

10  Motricity and its shareholders from a repeat of the damaging events described herein, including,

11  but not limited to, putting forward for shareholder vote, resolutions for amendments to the

12  Company's By-Laws or Articles of Incorporation and taking such other action as may be

13  necessary to place before shareholders for a vote of the following Corporate Governance

14  Policies:

15              1.      a proposal to strengthen the Company's controls over financial reporting;

16              2.      a proposal to strengthen the Board's supervision of operations and

17  develop and implement procedures for greater shareholder input into the policies and guidelines

18  of the Board;

19              3.      a provision to permit the shareholders of Motricity to nominate at least

20  three candidates for election to the Board;

21              4.      a provision to control insider selling; and

22              5.      a proposal to strengthen Motricity's oversight of its disclosure

23  procedures;

24      C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and

25  state statutory provisions sued hereunder, including attaching, impounding, imposing a

26  SHAREHOLDER DERIVATIVE COMPLAINT                    **WEINSTEIN COUTURE PLLC**
                                                        1001 FOURTH AVENUE, SUITE 4400
27                                                      SEATTLE, WASHINGTON 98154
                                                        (206) 389-1734 - FACSIMILE (206) 389-1708

28

1   constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or

2   their other assets so as to assure that plaintiffs on behalf of Motricity have an effective remedy;

3       D.      Awarding to Motricity restitution from defendants, and each of them, and

4   ordering disgorgement of all profits, benefits, and other compensation obtained by the

5   defendants, including all ill-gotten gains from insider selling by defendants;

6       E.      Awarding to plaintiffs the costs and disbursements of the action, including

7   reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

8       F.      Granting such other and further relief as the Court deems just and proper.

9

10

11                          **JURY DEMAND**

12       Plaintiffs demand a trial by jury.

13   Dated: October 17, 2011.

14

15                                      WEINSTEIN COUTURE PLLC

16                                      By /s/ Benjamin R. Couture
                                        Benjamin R. Couture, WSBA #39304
17                                      Brian D. Weinstein, WSBA #24497
                                        Audrey L. Udashen, WSBA #42868
18                                      Attorneys for Plaintiffs

19

20                                      GOLDFARB BRANHAM LLP

21                                      By  /s/ Trey Branham
                                        Trey Branham
22                                      Hamilton Lindley
                                        2501 N. Harwood Street, Suite 1801
23                                      Dallas, Texas 75201
                                        Telephone: (214) 583-2233
24                                      Facsimile: (214) 583-2234
                                        Attorneys for Plaintiffs
25

26   SHAREHOLDER DERIVATIVE COMPLAINT

27

28

**WEINSTEIN COUTURE PLLC**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98154
(206) 389-1734 – FACSIMILE (206) 389-1708